Ole Bardahl v. Commissioner. Inga Bardahl v. Commissioner.
Bardahl v. Commissioner
Docket Nos. 1350-63 and 1352-63.
United States Tax Court
T.C. Memo 1965-116; 1965 Tax Ct. Memo LEXIS 214; 24 T.C.M. (CCH) 613; T.C.M. (RIA) 65116; April 29, 1965
*214 Joseph H. Trethewey, White Henry Stewart Bldg., Seattle, Wash., for the petitioners. Richard H. M. Hickok, for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of petitioner Ole Bardahl for the calendar year 1958 in the amount of $69,373.90 and determined a deficiency in the income tax of petitioner Inga Bardahl for this same calendar year also in the amount of $69,373.90. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the question of whether respondent properly included in the income of each of petitioners the amount of $15,000 or any portion thereof as a dividend resulting to each petitioner from the transfer of a personal residence to a corporation in which petitioners are the controlling shareholders for an amount in excess of the fair market value of the property at the date of the transfer. Findings of Fact Some of the facts have been stipulated and are found accordingly. Ole and Inga Bardahl, husband and wife, residing in Seattle, Washington, each filed a separate individual income tax return for the *215 calendar year 1958 with the district director of internal revenue, Tacoma, Washington. Ole and Inga Bardahl, hereinafter referred to as petitioners, are controlling shareholders of Bardahl International Corporation. On March 25, 1958, petitioners sold a personal residence which they jointly owned under the community property laws of the State of Washington to Bardahl International Corporation in exchange for the assumption of a mortgage in the amount of $15,152.39 by Bardahl International Corporation and a demand note in the amount of $84,847.61 of Bardahl Internal Corporation, which note earried 4 percent interest. In 1951 petitioners had purchased for the sum of $55,000 the residence which they sold to the corporation in 1958 and had used the residence as their personal residence from the date of its purchase to the date of its sale. Petitioners made some improvements to the property between the date of purchase and the date of sale. The cost basis of the residence to them at the date of its sale was $61,389.51. The residence which petitioners sold was located at 7705 - 34th Avenue, N.W., Seattle, Washington. Within a period beginning 1 year from the date of the sale of the *216 residence located at 7705 - 34th Avenue N.W., Seattle, Washington, hereinafter referred to as the Bardahl house, petitioners purchased a new residence located approximately 10 blocks away from the Bardahl house at a cost of $235,000. From approximately the date of purchase of the new residence continuously through the time of the trial of this case, the new residence purchased by petitioners has been used as their principal residence. Bardahl house was constructed in 1940. It is of Tudor architecture which was common during the period from 1920 to 1930 but is a type of architecture which was very infrequently used thereafter. The property is a luxury type one-family residence. It is located in the northwesterly part of the city of Seattle on a lot 300 feet by 200 feet. Lengthwise, the lot fronts on a bluff having a panoramic view of Puget Sound, the Olympic Mountains and the islands, with immediately below a view of Shilshole Bay. Much of the land on which the property is located is steep hillside land which is of very little use other than affording privacy to the property. The bluff on which the house sits is approximately 250 to 300 feet above Shilshole Bay and the railroad tracks *217 of the Great Northern Railroad run along Shilshole Bay at the foot of this bluff. The property has been well landscaped. The residence is two stories with a full basement, brick-faced, and covers about 2,158 square feet of ground floor area. It contains 11 rooms, 2 of which are in the basement, 4 on the first floor, and 5 on the second floor. The house is so located that each of the rooms, except one of the second floor bedrooms which is situated for use as a room for a domestic, has a view of Puget Sound and Shilshole Bay. There are 3 full and 2 partial bathrooms in the house, and it is a well constructed house. Some of the walls are wood paneled. When petitioners purchased the Bardahl house in 1951, it had been vacant and on the market for a year or more. The original asking price had been substantially more than the $55,000 which petitioners paid for the property. The purchase by petitioners of the property was arranged by Dwight S. Hawley who had been in the real estate business in Seattle for a number of years, specializing primarily in commercial properties. Hawley, himself, lived one block north of the Bardahl house and had lived in the area in which the house was located *218 when it was originally built in 1940 and had watched it during construction. He arranged for fire insurance on the house which was carried in the amount of $80,000. The neighborhood behind or to the east of the Bardahl house consists of very fine homes in a price range from $37,000 to $65,000. This neighborhood is bordered by a neighborhood containing homes in the $18,500 to $27,000 price range. The houses closer to the Bardahl house have a view and this fact enters into their value. Single family residences of the luxury type such as the Bardahl house are rarely if ever on the rental market in Seattle, and if they are, it is usually on the basis of a short-term rental while the lessee is finding permanent quarters. The Bardahl house is of the luxury type which includes many features that are built to the personal taste of the builder which add to its cost but not necessarily to its value to a prospective purchaser. In July of 1959 a property located at 8051 - 32nd Avenue, N.W., only a few blocks away from the Bardahl house, was sold for $100,000. This property consists of a lot 100 feet wide by 360 feet deep with a one-story house with a partial basement located on it. The *219 house contains a recreation room in the basement and two bedrooms, three baths, a living room, dining room, and family room on the ground floor. It has a view similar to the view from the Bardahl house but not as expansive. The lot on which this house is located is more level and has more usable land than the lot on which the Bardahl house is located. The house on this property was constructed in 1937. The property is completely fenced and extensively landscaped. The individuals who purchased this house in 1959 had previously lived in the neighborhood in which it was located in Seattle and had moved to the country. They had a great desire to relocate in this neighborhood when they moved back to Seattle, and the house at 8051 - 32nd Avenue, N.W., was the one house they found that they could obtain, and they paid substantially in excess of the market value for the house in order to obtain it at the time they wanted it. This house had been sold in 1953 for approximately $40,000. In April 1960 a property located on Lake Washington in Seattle was sold for $85,000. This property consisted of a lot bordering 100 feet on Lake Washington and having a depth of approximately 500 feet with a *220 house thereon containing 11 rooms, 5 on the first floor, 5 on the second floor, and a recreation room in the basement. This house has 3 fireplaces and 3 baths and an extra partial bath. The house is a frame colonial, built in 1929, and is not as fine a house as the Bardahl house. The land on which this house is located is more valuable than the land on which the Bardahl house is located, because the value of a water-front location on Lake Washington exceeds the value of a view location. In April 1961 a house located at 8353 - 32nd Avenue, N.W., Seattle, sold for $32,000. This property consists of a lot of approximately 8,250 square feet on which is located a one-family, 2-story full-basement residence. The lot is a level lot overlooking Shilshole Bay. The residence was much smaller than the Bardahl house. It contained a single fireplace, one full bath and two partial baths. In December 1958 a residence located at 8713 Loyola Avenue, Seattle, was sold for $36,000. This property consists of a one-story-full-basement and attic single family residence on a 28,700 square foot lot located on a bank overlooking Shilshole Bay. The house was built in 1925. The exterior is brick. The house *221 has one complete and three partial baths. The lot is well landscaped and well maintained. During the period 1951 through 1958 property values in the neighborhood in which the Bardahl house was located were increasing, but since that time have remained fairly stable or have been slightly declining in value. After petitioners sold their house to the Bardahl International Corporation, the house was occupied by their daughter and her husband. During the years 1958, 1959, and 1960, William G. Simpson, petitioners' son-in-law, was vice president of Bardahl International Corporation in charge of sales, and during this time while he and his family lived in the Bardahl house they entertained certain individuals who did business with the Bardahl International Corporation in the house. The house had been vacant and for sale for approximately 2 years at the time of the trial of this case. Neither of petitioners reported income for the calendar year 1958 from the sale of the Bardahl house on their income tax returns. Respondent in his notice of deficiency determined that the fair market value of the Bardahl house as of March 25, 1958, was $70,000 and that the $30,000 excess price over *222 the fair market value paid by the Bardahl International Corporation to petitioners constituted a dividend to them, $15,000 of which was includable in the income of each petitioner. Petitioners concede that they received $100,000 from the Bardahl International Corporation for their personal residence and that to the extent that $100,000 exceeds the fair market value of the house as of March 25, 1958, it constitutes a dividend to them from Bardahl International Corporation, one-half of which is includable in the taxable income of each of them. Ultimate Fact The fair market value of the Bardahl house on March 25, 1958, was $85,000. Opinion Petitioners take the position that the fair market value of the Bardahl house on March 25, 1958 when petitioners sold it to Bardahl International Corporation, was $100,000 and that they properly did not report any income from the sale, since they purchased a new home within a year and the gain on the sale therefore is not recognizable. Respondent does not contend that petitioners are required to report any gain on the sale of the Bardahl house, but relies on his determination that petitioners received a dividend from the Bardahl International *223 Corporation because the amount paid by the corporation for the house was in excess of the fair market value of the property at the date of sale. See (C.A. 9, 1962), affirming a Memorandum Opinion of this Court. The only issue between the parties is the fair market value of the Bardahl house on March 25, 1958. Fair market value is the price which would be arrived at between a willing buyer and a willing seller where neither was under a compulsion. The issue is factual and while the testimony of qualified experts is a guide in making the determination, the Court is not bound by such testimony. (C.A. 9, 1958) affirming a Memorandum Opinion of this Court and (C.A. 8, 1956), affirming a Memorandum Opinion of this Court. Petitioners offered the testimony of Hawley who had been a realtor in the Seattle area for a number of years and who lived near the Bardahl house. Hawley stated as his opinion that the fair market value of the house on March 25, 1958 was $100,000. Other than his experience in the real estate business *224 which was primarily in commercial real estate, but did include some transactions in residential property, Hawley gave no basis for his opinion. Hawley recognized that it was difficult to place a value on a house of this type because of the limited market for such houses and the fact that such houses were seldom placed on the market. Hawley testified that he had placed insurance on this house of $80,000 which he considered to represent 70 to 80 percent of the insurable value of the house exclusive of land. This witness did not further explain "insurable" value and apparently did not himself consider it indicative of fair market value. The other expert witness on behalf of petitioners was a real estate broker and appraiser. He stated that two of the normal methods used for appraising property were not practical to be used in the case of the Bardahl house. One of the methods which he stated was not practical for use in appraising the Bardahl house was the replacement value less an allowance for obsolescence and depreciation. As this witness explained, this type of house is built by an individual for his own use and even immediately after its completion its fair market value cannot be *225 judged by its cost because of the features built into the house by the individual builder which he cannot expect to recover in any way except the personal satisfaction of having features which he personally desires in a house. When the house is, as here, one that is 18 years old any relationship between construction costs or replacement costs and fair market value becomes even more remote. The second method which this witness stated is often used in appraising real property is capitalizing the income from the rental value. In his opinion such a system of valuation in connection with the Bardahl house or any house of its type is impracticable since houses of this type are seldom rented. This witness testified that a third method, and the one he attempted to use here, is the sale of comparable properties at approximately the date of the sale of the house being appraised. This witness stated that he was unable to locate any sales that he considered entirely comparable to the Bardahl house, but he did consider the sale of two properties to give an indication of the fair market value of the Bardahl house on March 25, 1958. One was the sale of a property at 8051 32nd Avenue, N.W. in July *226 1959 for $100,000. This witness stated that in his opinion this sale was for an amount in excess of the fair market value of the property because of the particular desire of the purchasers to buy that particular house at that particular time. He stated that in his opinion the premium paid was at least $25,000 and that the fair market value of the property at the time it was sold would not be in excess of $75,000 and might be as low as $60,000. The other property that this witness considered as somewhat comparable to the Bardahl house was on Lake Washington which was not in the same general location as the Bardahl house. This witness considered that property as comparable to the Bardahl house because it was similar in size and was view property. The witness considered the house less valuable than the Bardahl house and the land more valuable. This witness stated that in his opinion the fair market value of the Bardahl house on March 25, 1958, was between $85,000 and $100,000 and concluded that the fair market value was $92,500. Respondent offered the testimony of an expert witness who was a real estate appraiser and consultant. This witness had done appraisal work since mid-1949 and *227 since about mid-1957 had done solely fee-appraisal work. He had appraised a number of residential properties in the Seattle area in the $50,000 through $100,000 class. This witness in forming his opinion gave some consideration to sales of other properties. He considered the sale in July 1959 of the house at 8051 32nd Avenue, N.W. and stated in his opinion the price paid for that house was approximately twice its fair market value. This witness also considered the sale of a property located at 8353 32nd Avenue, N.W., for $32,000 and the one located at 8713 Loyola Avenue for $36,000. Petitioners contend that these two sales are not of property of the same type as the Bardahl house. This is certainly true as to size of the house and lot. The only similarity is in location and the witness recognized this fact. This witness stated that in addition he considered a listing of a house a short distance from the Bardahl house at $75,000 and considered the fact that he had been informed that the best offer received during the almost 2 years that the Bardahl house had been on the market immediately prior to the date of the trial of this case was $75,000. However, when petitioners objected to *228 the introduction of the listing price of the house and the offer on the Bardahl house to which this witness referred, this witness stated that his opinion as to the fair market value of the Bardahl house on March 25, 1958, would be the same without consideration of this listing and statement with respect to the offer on the Bardahl house. This witness gave as his opinion of the fair market value of the Bardahl house on March 25, 1958, the amount of $75,000. After considering the opinion testimony of the various experts, as well as all of the other evidence of record, we have concluded that the fair market value of the Bardahl house on March 25, 1958, was $85,000 and so hold. We therefore hold that each petitioner received a dividend in the year 1958 from Bardahl International Corporation in the amount of $7,500 resulting from the $15,000 amount in excess of its fair market value paid by that corporation to petitioners for their personal residence. Decision will be entered under Rule 50.